ALFORD, Judge.
The defendant appeals the trial court’s judgment in favor of plaintiff, John W. Lambert, Jr., D.Y.M. Said judgment reinstated Dr. Lambert’s license to practice veterinary medicine and returned to him his license to prescribe controlled substances.
PLAINTIFF’S ACTIONS
Plaintiff is a veterinarian whose practice consists largely of performance animals such as race horses and fighting cocks. Dr. Lambert treats horses in several different stables with each stable having a number of horses. As part of his treatment, he visits each stables at least once a month and confers with the stable owner who is also the owner and/or trainer of the horses.
During the period of 1979 to 1983, Dr. Lambert prescribed and/or purchased large quantities of Schedule II controlled substances as evidenced by copies of the prescriptions and DEA Form 222 order forms which were required to be kept by law. Schedule II drugs are defined in LSA-R.S. 40:963 B as follows:
(1) The drug or other substance has a high potential for abuse.
(2) The drug or other substance has a currently accepted medical use in treatment in the United States or a currently accepted medical use with severe restrictions, and
(3) Abuse of the drug or other substances may lead to severe psychological or physical dependence.
The drugs prescribed and/or purchased included opiates and stimulants, namely Dilaudid, Ritalin, Desoxyn, Didrex, Dolo-phine, Numorphan, Demerol and Cocaine.
The plaintiff utilized these drugs in the treatment of race horses and game cocks. Dr. Lambert found that soundness of the horses was a continuous problem, primarily with respect to lameness occurring in the horses’ front legs. In treating the lameness, Dr. Lambert recommended applying a combination of DMSO with Dilaudid topically to reduce inflammation and pain. Dr. Lambert prescribed Ritalin to stimulate horses when they became “stale” and were not interested in training. He used Nu-morphan suppositories to treat horses for pain and colic and Dolophine for pain. The drugs Dilaudid, Desoxyn, Didrex and Ritalin were prescribed by Dr. Lambert for the stated purpose of conditioning birds for cock fighting.
DEFENDANT’S ACTIONS
Because of the large quantity of Schedule II drugs Dr. Lambert prescribed during the period mentioned previously (the record shows prescriptions for more than 90,000 Dilaudid 4 mg. tablets alone), the defendant, Louisiana Board of Veterinary Medicine (Board), decided to investigate Dr. Lambert. On August 9, 1983, the Board sent Dr. Lambert a formal notice advising him that an adjudicatory hearing would be held on September 1, 1983, at 2:00 P.M. The notice stated that the hearing was to be conducted under the Board’s authority to suspend or revoke a veterinary practitioner’s license, particularly LSA-R.S. 37:1518 (1), (2), (4) and (5) and 37:1526 (6) and (14), and the Rules adopted by the Board specifically dealing with prescribing and dispensing drugs. More specifically, the notice stated, “(T)he Board will receive evidence and testimony relating to a sworn complaint filed by Lt. Robert L. Thomason, Jr., of the Louisiana State Police concerning suspected diversionary use and abuse of Schedule II drugs by you during the period of 1979 to date.”
The Board refused to grant a continuance requested by plaintiff for discovery and deposition purposes. The plaintiff then sought and was granted a temporary restraining order by the district court enjoining the hearing. The TRO was subsequently dissolved on September 27, 1983, by the plaintiff after discovery was completed. On September 30, 1983, the Board sent Dr. Lambert a revised or second formal notice, advising him that an adjudicatory hearing would be held on October 27, 1983, at 10:00 A.M.
Like the first notice, this notice advised that the hearing was to be conducted under *1343 the Board’s authority to suspend or revoke a practitioner’s license, citing the same statutory authority and the same Rules of the Board. However, in addition to stating the hearing would specifically deal with prescribing and dispensing drugs, the notice added the words “and record keeping.” Moreover, the second notice, while retaining the reference to the sworn complaint, deleted the prior notice’s reference to “suspected diversionary use and abuse of Schedule II drugs” and substituted “evidence of prescription of Schedule II drugs by you during the period of 1979 to date... The Board will also receive evidence with reference to the prescriptions and their use in the practice of veterinary medicine from experts and other veterinary practitioners”. The Board also served Dr. Lambert with a subpoena duces tecum for his records in regard to certain named individuals as animal owners.
Pursuant to plaintiff’s motion for a Bill of Particulars, the Board responded with a listing of the pharmacies that had filed the prescriptions and advised the plaintiff “The Board does not intend to inquire into any diversionary use and abuse of Schedule II drugs by Dr. Lambert.” The Board also provided a more detailed and definite statement of the charges in response to plaintiff’s motion.
The formal adjudicatory hearing was held on October 27, 1983, at which time eight witnesses testified and other documentary evidence was introduced. On January 31, 1984, the Board rendered its judgment finding that Dr. Lambert had engaged in unprofessional conduct in contravention of LSA-R.S. 37:1526 (14)[1] by (1) failing to establish a patient/veterinarian relationship prior to dispensing Schedule II drugs and (2) failing to make or maintain proper individual records on each animal treated. The judgment ordered immediate revocation of Dr. Lambert’s license to practice veterinary medicine, but suspended said revocation if Dr. Lambert permanently surrendered his license to prescribe controlled substances within ten days, and if he attended and provided evidence of completion of approved continuing education programs in veterinary medicine for five years.
TRIAL COURT ACTION
Dr. Lambert appealed the Board’s decision to the trial court in accordance with LSA-R.S. 49:964. On November 2, 1984, the trial court reversed the Board’s judgment in its entirety pursuant to LSA-R.S. 49:964 G (6)[2] on the grounds that the judgment “is manifestly erroneous in view of the reliable, probative and substantial evidence on the whole record,” thus fully reinstating Dr. Lambert’s license to practice veterinary medicine. The court also ordered that Dr. Lambert’s license to prescribe controlled substances be returned to him and nullified the condition whereby Dr. Lambert had to attend continuing education programs. The Board then perfected this appeal, contending that it provided plaintiff with adequate timely notice of the charges against him, thus satisfying “due process” requirements and that the evidence adduced at the adjudicatory hearing was sufficient to support the Board’s actions. We agree with the Board’s contentions and reverse the trial court.
*1344 ADEQUACY OF NOTICE
The requirement of notice in an administrative proceeding is not as strict or exacting as that in a judicial proceeding; notice must be reasonable under the circumstances of the particular case, and it serves the primary function of allowing the plaintiff the opportunity to prepare for the hearing. Buras v. Bd. of Trustees of Pol. Pens. Fund, 430 So.2d 237 (La.App. 4th Cir.1983).
Generally, an adjudicatory hearing must follow the provisions of the Administrative Procedure Act, LSA-R.S. 49:950 et seq. The requirements for reasonable notice are set forth in LSA-R.S. 49:955 B as follows:
The notice shall include:
(1) A statement of the time, place, and nature of the hearing;
(2) A statement of the legal authority and jurisdiction under which the hearing is to be held;
(3) A reference to the particular sections of the statutes and rules involved;
(4) A short and plain statement of the matters asserted.
If the agency or other party is unable to state the matters in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved. Thereafter, upon application, a more definite and detailed statement shall be furnished.
When an adjudicatory hearing deals with revocation of a license from a duly licensed doctor of veterinary medicine, the provisions of LSA-R.S. 49:961 C also apply. This provision states in pertinent part: “No revocation ... of any license is lawful unless ... the agency gives notice by mail to the licensee of facts or conduct which warrant the intended action, and the licensee is given an opportunity to show compliance with all lawful requirements for the retention of the license.”
While there was no specific mention in either the first or second formal notices mailed to Dr. Lambert that patient/veterinarian relationships were to be questioned, both notices indicated that Dr. Lambert’s compliance with the Board’s rule for prescribing and dispensing drugs was being questioned, specifically in regard to Schedule II drugs. Said rule requires the establishment of a patient/veterinarian relationship before prescribing or dispensing Schedule II controlled substances. The second formal notice of September 30, 1983, afforded Dr. Lambert reasonable notice that his record keeping, at least as related to prescriptions for Schedule II drugs, was to be examined. Moreover, the subpoena and the Bill of Particulars which Dr. Lambert received more than a week before the hearing advised him of the specific client records and prescriptions that were to be examined. Therefore, we agree with the Board that the notice given was sufficient to apprise the plaintiff of the facts or conduct which warranted the Board’s inquiry. The plaintiff had engaged in active discovery and had the requisite opportunity to prepare for the hearing. The plaintiff was present at. the hearing and through able counsel, extensively cross-examined the Board’s witnesses. Therefore, plaintiff was given the opportunity to show compliance with the lawful requirements for retaining his license.
SUFFICIENCY OF EVIDENCE
Courts have the ultimate duty to determine whether findings of an administrative body are supported by sufficient evidence. Hanson v. Louisiana State Racing Com’n, 436 So.2d 1308 (La.App. 4th Cir.1983); writ denied, 443 So.2d 592 (La.1983). In the instant case, the trial court rendered its decision based upon the record of the administrative hearing and determined that the Board’s decision was manifestly erroneous in view of the factual evidence. We disagree.
In accordance with the Rule for Prescribing and Dispensing Drugs adopted by the Board, effective March 1, 1980,[3] a veterinarian shall not prescribe or dispense con *1345 trolled substances, which includes Schedule II drugs, without first having established a patient/veterinarian relationship by personally examining the individual animal, herd, or a representative sample thereof and determining that such controlled substance is therapeutically indicated. Since the rule is phrased in the conjunctive, the veterinarian has the duty to comply with both prongs of the above provision. A veterinarian who violates either prong of the rule has engaged in unprofessional conduct and is subject to discipline in accordance with LSA-R.S. 37:1526(14).
A review of the record shows that much of the testimony dealt with whether the controlled substances were therapeutically indicated; however, the Board’s judgment does not mention a violation of this part of the provision, but refers to the lack of a patient/veterinarian relationship. Dr. Lambert advised that most stables had between fourteen and twenty-five horses. He testified that he took care of the involved animals, that he was “familiar with the stable”, that he had “looked at” the horses and that he counseled with the owners/trainer. However, he was unable to relate a specific prescription to a specific problem involving a specific horse. Instead, he testified generally that he recommended Dilaudid mixed with DMSO as a topical analgesic for “soreness.”
It is readily apparent that Dr. Lambert prescribed controlled substances based largely on what the owners/trainers related to him as problems with their animals. He stated “(t)hese people that I know, that I trust their ability to make proper judgments as to what the horse needs.” In reference to a prescription for two cartons of Numorphan suppositories, Dr. Lambert stated, “They had a horse with colic, and they wanted to keep some on hand. A lot of people that have the problem like to keep some on hand.” When questioned about a prescription for injectible Dilaudid, Dr. Lambert replied, “That’s for him to use and condition and train his horses and to keep in respect — you know, for farm use.”
While Dr. Lambert’s reliance on a trainer’s experience and his overall knowledge of horses may be sufficient for prescribing drugs or medicinal agents restricted to veterinary use only in accordance with the Board’s rule, such is not the case with controlled substances where the potential for abuse and misuse is high. When prescribing controlled substances, the veterinarian must be able to show that the animal, the herd, or a representative sample if dealing with a herd, has actually been examined by the vet and that the animal’s or herd’s condition warrants the prescribed substance. Thus, the Board’s determination that Dr. Lambert violated the rule in regard to prescribing controlled substances is not manifestly erroneous in view of the evidence in the record.
In regard to Dr. Lambert’s record keeping, the applicable rule requires a veterinarian to maintain an individual record on each animal to include, among other items, a listing of each complaint, diagnosis, therapy, surgical procedures and disposition of the case.[4] Failure to keep adequate *1346 records is considered unprofessional conduct and subject to discipline in accordance with LSA-R.S. 37:1526(14).
A review of Dr. Lambert’s testimony shows that he relied on his memory as to diagnosis and treatment of individual animals. In one instance, “treatment of a mare” was the sole entry. There was no information as to complaint, diagnosis or therapy that was utilized; however, Dr. Lambert stated he remembered the problem involved. In response to the specific question, “Have you maintained an individual record on each animal which was owned by these persons which you have treated?”, Dr. Lambert replied, “I have records of my transactions with them ... I have records on the animals I treat.” However, a review of Dr. Lambert’s records on a specific horse, owned by an individual whose records were subpoeaned, shows no entries for complaints, diagnoses or treatments on the dates on which eight prescriptions for Dilaudid mixed with DMSO were issued by Dr. Lambert for that particular horse. Thus, the Board’s finding that Dr. Lambert violated the rule in regard to record keeping is not clearly erroneous in view of the evidence in the record.
For the foregoing reasons, we reverse the judgment of the trial court and reinstate the judgment of the Louisiana Board of Veterinary Medicine in its entirety, thereby revoking Dr. Lambert’s license, said revocation to be suspended if Dr. Lambert complies with the conditions imposed by the Board. Costs of this appeal are to be borne by Dr. Lambert.
REVERSED AND RENDERED.

. LSA-R.S. 37:1526 provides in pertinent part:
Upon written complaint sworn to by any person the board may, after a hearing held pursuant to R.S. 37:1518(5) and by a concurrence of four members, revoke or suspend for a specified time the license of, or otherwise discipline, any licensed veterinarian for any of the following reasons:
******
(14) Unprofessional conduct as defined in regulations adopted by the board.

. LSA-R.S. 49:964.G provides in pertinent part: The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
******
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record. In the application of the rule, where the agency has the opportunity to judge of the credibility of witnesses by firsthand observation of demeanor on the witness stand and the reviewing court does not, due regard shall be given to the agency’s determination of credibility issues.

. The rule for Prescribing and Dispensing Drugs is now codified in the Louisiana Administrative Code, Volume 3, Title 46, Part LXXXV, § 705.
A licensed veterinarian shall not prescribe or dispense, deliver or order delivered:
*1345 A. Any drug or medicinal agent carrying the legend "Federal (USA) law restricts this drug to use by or on the order of a licensed veterinarian” to be administered to animals with which he has not established a client-veterinarian relationship.
B. Any controlled substance, as defined by the U.S. Food and Drug Administration, without first having established a patient-veterinarian relationship by having personally examined the individual animal, herd, or a representative segment or a consignment lot thereof, and determined that such controlled substance is therapeutically indicated following said examination.
C. "Client-veterinarian relationship" as used in this rule shall be defined as a relationship created by actual consultation by the veterinarian with the animal’s owner or duly authorized agent.
D.Any veterinarian who violates this rule shall be guilty of unprofessional conduct within the meaning of Section 1526(14).

. The rule for Record Keeping is now codified in the Louisiana Administrative Code, Volume 3, Title 46, Part LXXXV, § 701.A.1.
A. It shall be considered unprofessional conduct within the meaning of Section 1526(14) for a licensed veterinarian to keep improper records. Records should be established and maintained as follows:
1. Each Louisiana licensed veterinarian shall maintain an individual record on each animal to include, but not be limited to, the following;
*1346 a. Name, breed, sex, description, permanent identification (if available), tattoos or other identifying marks, name of owner, complaint, diagnosis, therapy, surgical procedures and disposition of the case.
b. Records shall be maintained for at least five years, including records of large animal and/or herd type practice.